IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT LEE CHILDRESS, JR., | ) | CASE NO. 4:14-cv-00690 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| JOE COAKLEY, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

Robert Lee Childress, Jr. ("Childress" or "Petitioner") has a criminal history that includes

both federal and state offenses in the state of Michigan.[1]  Childress filed this habeas corpus

action pursuant to 28 U.S.C. § 2241 ("§ 2241") on March 28, 2014, seeking to have time he

served in state prison credited  against the federal sentence he is currently serving.  Doc. 1.  In

his petition, Childress contends that, pursuant to 18 U.S.C. § 3585 ("§ 3585"), he is entitled to an

award of prior custody credit for a period of 284 days that he spent in state custody between

January 4, 2008—when he was arrested in Oakland County, Michigan—and October 13, 2008—

the day before he was sentenced in Oakland County. Childress argues that this time was not

credited to his state sentences in Oakland County or Macomb County and that it therefore should

be credited under § 3585(b) toward his federal supervised release revocation sentence.

Respondent argues that Childress is not entitled to any prior custody credit toward his

federal sentence because the State of Michigan credited those 284 days to Childress's state

parole violator sentence.  Respondent contends that crediting the time Childress spent in state

---

[1] See Doc. 1-3, p. 3; Doc. 1-4, pp. 2-4; Doc. 9-1, pp. 1-12; Doc. 9-2, pp. 47-59 (discussing Childress's criminal
history in various Michigan state courts as well as the United States District Court for the Eastern District of
Michigan).

custody both to his federal sentence and his state parole violator sentence would amount to "double-crediting," which is barred by § 3585(b).

At the time the petition was filed, Childress was in the custody of the Federal Bureau of Prisons ("BOP") at its FCI Elkton facility in Lisbon, Ohio.  As of February 19, 2015, Childress was relocated to 2727 Boston, Avenue, San Diego, California 92113 (Pacific Furlough Facility). See Doc. 11 (Notice of Address Change), http://www.bop.gov/inmateloc/.[2]  This matter is before the undersigned pursuant to an order of reference for a Report and Recommendation. Doc. 4.

Childress's § 2241 challenge to his federal sentence calculation requires the Court to consider the relationships among certain of his prior and current state and federal sentences.  As described more fully herein, the undersigned finds that the time that Childress spent in custody between January 4, 2008, and October 13, 2008, was served on a state sentence and therefore cannot also be credited to his federal sentence.

Accordingly, the undersigned recommends that the Court **DENY** Childress's petition for writ of habeas corpus.

## I.    Facts

The summary below provides a factual background for the offenses included in the Court's analysis.

### A.  State Offenses[3]

*Wayne County Cases: 00-4507, 01-2772, and 02-4109*

---

[2] BOP Records show that Childress has moved since the February 19, 2015 Change of Address was filed. http://www.bop.gov/inmateloc (last visited July 15, 2015). The BOP Inmate Locator shows Childress's current location as RRM Long Beach, 1299 Seaside Ave., San Pedro, CA  90731. Childress, however, has not filed a Notice of Address Change to reflect this location.  As discussed below, Childress's changes of address after the petition was filed do not affect this Court's jurisdiction.

[3] The state offenses discussed herein include charges of Larceny by Conversion-$20,000 or more (Wayne: 00-4507 and 01-2772); False Pretenses-$1,000 or More but Less Than $20,000 (Wayne: 02-4109); Non-Sufficient Funds Over $500 (Wayne: 05-12449); Intent to Pass False Title (Oakland: 08-219884-FH); and False Pretenses-$20,000 or more (Macomb: 09-3052-FH).

On February 12, 2000, Childress was arrested and charged in Wayne County, Michigan in Wayne County Circuit Court Case Numbers 00-4507 and 01-2772.  Doc.  9-2, p. 50 (Affidavit of Forest B. Kelly) ¶ a.  Childress pleaded guilty on April 26, 2001, and was sentenced to three years of probation in Wayne County Case Numbers 00-4507 and 01-2772. Doc. 9-2, p. 51, ¶ h.

On August 14, 2002, Childress was sentenced to a term of imprisonment of 11 months to five years on a new state charge in Wayne County Case Number 02-4109.  Doc. 9-2, p. 52,  ¶ y; (Offender Tracking Information System Offender Profile); Register of Actions, Case No. 02-004109-01-FH, Wayne County.

The conviction in Case Number 02-4109 on August 14, 2002, also resulted in a probation violation of Childress's three-year probation sentences in cases 00-4507 and 01-2772; thus, Childress was sentenced to two concurrent terms of imprisonment of two to ten years for the probation violation. See Doc. 9-2, p. 52, ¶ z; Register of Actions Case No. 00-004507-01-FH; Register of Actions Case No. 01-002772-01-FH.  Childress was paroled by state authorities on March 27, 2004. Doc. 9-2, p. 52, ¶ aa.

*Wayne County: Case 05-12449*

On November 23, 2005, while on parole from his state sentences in Wayne County Cases 00-4507, 01-2772, and 02-4109, Childress was arrested and placed in the custody of Wayne County officials in connection with a new state charge.  Doc. 9-2, pp. 52-53, ¶ bb.  On December 13, 2005, Childress pleaded guilty to the state charge in Wayne County Case Number 05-12449 and was sentenced to pay a fine of $500.  Doc. 9-2, p. 53, ¶ cc.

*Oakland County*

On January 4, 2008, while Childress was on state parole in Case Numbers 00-4507 and 01-2772 in Wayne County and on federal supervised release in Case Number 2:00-cr-80466-

GCS-1[4], Childress was arrested by state authorities in Oakland County and charged with a new state offense in Case Number 08-219884-FH. Doc. 9-2, p. 53, ¶ ii.  Childress remained in custody while awaiting a new state sentence, and on October 14, 2008, he was sentenced to four and-a-half years to thirty years imprisonment to be served consecutively to his state parole violator term.[5]  Doc 9-2, p. 54, ¶ ll.

*Macomb County*

On August 25, 2008, while in custody in Oakland County, Childress was arrested by Macomb County officials on separate state charges.  Doc. 9-2, p. 53, ¶ jj.  On July 7, 2010, the court sentenced Childress to 19 to 120 months in prison to run concurrently with the four-and-a-half years to thirty years of imprisonment from the Oakland County offense, but "consecutively with his pre-existing state parole term(s)." Doc. 9-2, p. 54, ¶¶ nn-oo.

Childress was not awarded any prior jail credit for either the Oakland sentence or the Macomb sentence.  See Doc. 1-3, p. 2 (Judgment of Sentence, 6th Judicial Cir. County of Oakland); Doc. 1-4, p. 4 (Amended Judgment of Sentence, 16th Judicial Cir. Macomb County).

**B.  Federal Offenses**

On October 17, 2000, Childress was charged in the United States District Court for the Eastern District of Michigan ("Eastern District of Michigan") on a three-count indictment. Doc. 9-2, p. 50, ¶¶ e-f.  On February 28, 2002, Childress pleaded guilty to the federal offense.  Doc. 9-2, p. 52, ¶ t.  He was sentenced in the Eastern District of Michigan to an 11-month term in prison followed by a five-year term of supervised release.  Doc. 9-2, p. 52, ¶ x; Doc. 9-2, pp. 76-82 (Judgment Entry, United States District Court for the Eastern District of Michigan, Case No.

---

[4] Childress's federal offenses are discussed below.

[5] The time that Childress is seeking credit for in his petition is time spent in custody between the date he was arrested in Oakland County, January 4, 2008, and the day before the date on which his sentence was imposed, October 13, 2008. Doc. 1, p. 6 (Petition).

2:00-cr-80466-GCS-1).  Childress served his 11-month sentence from March 27, 2004, through June 18, 2004.  Doc. 9-2, p. 52, ¶ aa; Doc. 9-2, p. 7.[6]  The subsequent five-year supervised release term began when Childress was released from prison on June 18, 2004.  Doc. 9-2, p. 52, ¶ aa.

On March 9, 2006, the Eastern District of Michigan issued a warrant for Childress's arrest based on an alleged violation of his supervised release conditions. Doc. 9-2, p. 98. In the petition for the warrant, the probation officer alleged that, on December 13, 2005, Childress pleaded guilty to a state felony in Wayne County where he was sentenced to pay a $500 fine in Case Number 05-12449.  Doc. 9-2, p. 96. On May 7, 2007, the District Court continued Childress's term of supervised release and ordered that Childress "serve four months on home confinement." Doc. 9-2, pp. 105-07 (United States District Court for the Eastern District of Michigan, Judgment).

On June 11, 2010, a United States Probation Officer submitted another supervised release violation report and requested a warrant for Childress based on an alleged violation arising from the 2008 arrests in Oakland and Macomb Counties. Doc. 9-2, p. 110. On September 30, 2010, the Eastern District of Michigan "borrowed" Childress on a writ of habeas corpus *ad prosequendum* for a federal sentence hearing.  Doc. 9-2, p. 54, ¶ qq.  At the hearing, the court revoked Childress's term of supervised release and sentenced him to serve three years in prison consecutive to the Michigan state sentences.[7]  Doc. 9-2, p. 54, ¶ rr; Doc. 9-2, pp. 143-44 (United States District Court for the Eastern District of Michigan, Judgment). After federal sentencing,

---

[6] He was credited with prior custody time for time spent in custody from July 18, 2000, through July 20, 2000; from January 18, 2001, through January 22, 2001; and from July 3, 2001, through March 4, 2002.  Doc. 9-2, p. 52, ¶ aa; Doc. 9-2, p. 7.

[7] On appeal, on February 8, 2012, the United States Court of Appeals for the Sixth Circuit affirmed the revocation and sentence.  Doc 9-2, pp. 121-34 (Opinion). Childress also sought habeas relief pursuant to § 2255 on several grounds, one of which was that his sentence credit was improper. Doc. 9-2, p. 147. On July 3, 2013, the Eastern District of Michigan denied the petition.  Doc. 9-2, pp. 147-61.

Childress was returned to state authorities.  Doc. 9-2, pp. 54-55, ¶ rr; Doc. 9-2, p. 63 (U.S. Marshals Service Prisoner Tracking System, District of Eastern Michigan, Detroit).

Childress's federal sentence commenced on April 17, 2013, the day that he was paroled from state prison.  Doc 9-2, p. 55, ¶ uu; Doc. 9-2, p. 5 (Public Information Data for Robert Lee Childress Jr.).  As it currently stands, Childress's projected federal sentence release date, if he receives all the good time credit available to him, is November 15, 2015.  Doc. 9-2, p. 3, (Public Information Data for Inmate Robert Lee Childress Jr.).

## II.     Jurisdiction

District courts have the authority to grant a writ of habeas corpus "within their respective jurisdictions." *28 U.S.C.A. § 2241(a).*  A petition for a writ of habeas corpus that challenges a prisoner's present physical confinement under § 2241 is within a district court's "respective jurisdiction" if the court has personal jurisdiction over the prisoner's immediate custodian. *Braden v. 30th Judicial Cir. Ct. Ky.*, 410 U.S. 484, 495 (1973); *Rumsfield v. Padilla*, 542 U.S. 426, 442 (2004).  The prisoner's immediate custodian, and, therefore, the appropriate respondent pursuant to a petition under § 2241, is the warden of the facility in which the prisoner is incarcerated.  *Padilla*, 542 U.S. at 447.  For a petition that challenges computation of a sentence, jurisdiction is proper only in the district of confinement. *Id*. at 443 and 447 (holding that, when a petitioner challenges his "present physical custody within the United States," he should file the petition in the district of confinement); *see also United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989)(holding that judicial review of computation and execution of sentence must be brought in the district of confinement).  A court's jurisdiction is determined at the time the petition is filed in federal court.  *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998)(holding that under § 2254, Spencer was "in custody" because he was incarcerated when he filed the petition even

though he was released before the court returned a decision);  *see also Parks v. Williamson*, 2009 WL 302229, *3 (E.D. Ky. Feb. 6, 2009)(stating that it is a long-established rule that "determination of the proper respondent is made at the time when the petition is filed").

Here, Childress filed his petition on March 28, 2014, while he was in custody at the Federal Correctional Institution Elkton (FCI Elkton) in Lisbon, Ohio, which is located in the Northern District of Ohio.  The named Respondent, Joe Coakley, was the warden of FCI Elkton on March 28, 2014; and therefore, Respondent was Childress's custodian when Childress filed the petition. *See Padilla*, 542 U.S. at 447.  Thus, because the Court had jurisdiction over Warden Coakley at the time Childress filed his petition, this Court has jurisdiction to consider Childress's petition.

A petitioner's transfer to a facility outside the district in which the petition was filed does not destroy personal jurisdiction. *Tribble v. Killian*, 632 F.Supp.2d 358, 361 (S.D.N.Y. July 13, 2009) (*citing Padilla*, 542 U.S. at 441); *Griffin v. Ebbert*, 751 F.3d 288, 290-91 (5th Cir. 2014); *Pinson v. Berkebile*, 2015 WL 1020336, * 3 (10th Cir. March 10, 2015). Thus, if the court had jurisdiction over the petition when it was filed, it does not "lose jurisdiction" when the petitioner is transferred.  *Bishop v. Medical Superintendent of Ionia State Hospital of State of Mich.*, 377 F.2d 467, 468 (6th Cir. 1967)(citing *Ex parte Mitsuye Endo*, 323 U.S. 283, 306(1944)). Transferring a petition for habeas corpus with the prisoner when he is relocated into a new district is an "exhausting approach" which could result in "a case 'hopscotching' between different courts one or more times before completion."  *See Parks*, 2009 WL 302229, *3. For example, in the current case, if the court were to transfer the petition to the district in which Childress is currently confined, the court in California would have to start the process of reviewing Childress's case from the beginning.  It is also possible that Childress could be

transferred again, and his petition would not be resolved until he was in a district of confinement long enough for a court to decide his case.

Thus, because the Court had jurisdiction at the time Childress filed his petition, jurisdiction in this Court is proper.  Further, Childress's subsequent transfer to California did not destroy this Court's jurisdiction over the Respondent or this petition.

### III.     Exhaustion of Remedies

"It is well-established that federal prisoners are required to exhaust their administrative remedies before filing a habeas corpus petition under § 2241" even if it is not explicitly required by the statute.  *Wesley v. John Lamanna,* 27 Fed. Appx. 438, 438-39 (6th Cir. 2001); *see also United States v.  Singh*, 52 Fed. Appx. 711, 712 (6th Cir. 2002)(requiring petitioner to exhaust the available administrative remedies completely before petitioning the court for a  review of the BOP's calculation)(citing *United States v. Westmoreland*, 974 F.2d 736, 737-38 (6th Cir. 1992)).

However, as a judicially-created requirement rather than a statutory one, exhaustion of administrative remedies is not a jurisdictional requirement.  *Rizo v. Pugh*, 2013 WL 774558, *3 (N.D. Ohio Feb. 26, 2013); *see also Santiago-Lugo*, 2015 WL 1936707, *6 (11th Cir. April 30, 2015)(reasoning that § 2241 has jurisdictional limits but exhaustion of remedies is not one of them, and if Congress wanted to make a district court's subject matter jurisdiction over § 2241 cases contingent on exhaustion of remedies then it had the ability to make exhaustion a jurisdictional requirement); *U.S. v. West*, 2003 WL 1119990, * 2 (E.D. Mich. Feb. 20, 2003)(holding that exhaustion is not jurisdictional because it is not required by statute and the explicit exhaustion requirements of the PLRA and the AEDPA do not apply to habeas corpus cases filed pursuant to § 2241).

A prisoner exhausts his administrative remedies by seeking "administrative review of the computation of [his] credit" under 28 C.F.R. §§ 542.10-.16.  *See U.S. v. Oglesby,* 52 Fed.Appx. 712, 714 (6th Cir. 2002)(holding that prisoners must exhaust administrative remedies by seeking administrative review before they bring a challenge to their sentence computations to the court for judicial review).  The BOP regulations for pursuing an administrative remedy include four steps: (1) an informal resolution conference with prison staff, (2) a formal written Administrative Remedy Request (B-9 form) filed no more than 20 days after the date of the event which constitutes the basis of the Request, (3) an appeal to the Regional Director within 20 days of the date on which the Warden signs the Response to the Administrative Remedy Request, and (4) an appeal to the General Counsel within 30 days of the date on which the Regional Director signs a response. 28 C.F.R. § 542.13-15.  The main objectives of the doctrine of exhaustion are (a) to allow agencies an opportunity to address potential problems and mistakes without outside interference and (b) to promote efficiency both by addressing a prisoner's concerns quickly outside of court and by creating a record if the grievance does go to court.  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

Childress attributes any shortcomings with respect to his exhaustion of administrative remedies to the Regional Director's delay in providing certain paperwork (Doc. 1-1, p.2) and contends that he has satisfied his obligation to exhaust administrative remedies (See Doc. 1, pp. 1, 6; Doc. 1-1, p. 2 (Affidavit)).[8]  Because failure to exhaust administrative remedies is not jurisdictional and Respondent has not challenged Childress's contention that he has satisfied the

---

[8] A review of the record shows that Childress made efforts toward informal resolution on November 12, 2013 pursuant to 28 C.F.R. § 542.13. Doc. 9-2, p. 13 (Request for Administrative Remedy Informal Resolution Form, FCI Elkton, Ohio). Then, Childress filed a Request for Administrative Remedy on November 26, 2013. Doc. 9-2, p. 11. On December 25, 2013, Childress filed a Regional Administrative Remedy Appeal. Doc. 9-2, p. 14. Childress received a response from the Regional Director on January 29, 2014, and appealed to the Office of General Counsel on February 19, 2014. Doc. 9-2, pp. 15-16 (Part B Response and Central Office Administrative Remedy Appeal).

exhaustion requirement, the undersigned has considered the merits of the petition and, as set forth below, recommends that the Court dismiss Childress's petition on the merits. *See Hearon v. Farley,* 2012 WL 2337915, *2 (N.D. Ohio June 19, 2012)(holding that it would be more efficient for the Court to address the merits of the petition rather than the "propriety of exhaustion").

## IV. Law and Analysis

### A. Habeas Corpus Petitions Under 28 U.S.C. § 2241

Under 28 U.S.C. § 2241, a writ of habeas corpus extends to a prisoner "in custody in violation of the Constitution or laws or treatises of the Unites States." A petition for a writ of habeas corpus pursuant to 28 USC § 2241 generally arises from "a challenge to the manner in which a sentence is executed, rather than the validity of the sentence itself." *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998)(citing *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991)). The authority to implement a federal sentence of imprisonment lies with the Attorney General through the BOP. *United States v. Wilson*, 503 U.S. 329, 331 (1992). The general rule is that the Attorney General through the BOP alone has the authority to determine if a defendant is eligible for credit for time served in detention prior to sentencing. *Wilson*, 503 U.S. at 335. Under § 2241, however, the district court may grant relief to a petitioner challenging the computation of his sentence. *Foster v. Zych*, 2009 WL 3631013, *2 (E.D. Mich. Oct. 30, 2009)(*citing McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir.1993)).

Here, Childress argues that the BOP failed to credit him with prior custody credit for time spent in custody prior to his federal supervised release revocation sentence. In doing so, Childress asserts that the BOP has violated the Double Jeopardy Clause of the United States Constitution. Doc. 1, p. 1. The Double Jeopardy Clause protects an offender from being "twice

put in jeopardy of life or limb" in connection with one offense. U.S. Const. amend. V.  Among

the situations to which this protection is applicable is one in which a defendant may be subject to

multiple punishments for one offense. See *Richards v. Scutt*, 2012 WL 234864, *7 (E.D. Mich.

Jan. 4, 2012), *report and recommendation adopted*, 2012 WL 220213 (E.D. Mich. Jan. 14,

2012); *Gray v. Curtin*, 2013 WL 6327824, *12 (W.D. Michigan Dec. 5, 2013); *Chapman v.

Woods*, 2013 WL 1629205, *5 (E.D. Michigan April 16, 2013) (all citing *North Carolina v.

Pearce*, 395 U.S. 711, 717 (1969)).

For the reasons set forth below, the undersigned concludes that the BOP's

implementation and calculation of Childress's sentence does not constitute a violation of the

Double Jeopardy Clause and federal habeas corpus relief is not warranted.

### B.  Sentence Calculation Under 18 U.S.C. § 3585

18 U.S.C. § 3585 governs the BOP's calculation of terms of imprisonment.  It provides:

> a) Commencement of sentence.—A sentence to a term of
> imprisonment commences on the date the defendant is received in
> custody awaiting transportation to, or arrives voluntarily to
> commence service of sentence at, the official detention facility at
> which the sentence is to be served.
> b) Credit for prior custody.—A defendant shall be given credit toward
> the service of a term of imprisonment for any time he has spent in
> official detention prior to the date the sentence commences—
>> a. As a result of the offense for which the sentence was
>> imposed; or
>> b. As a result of any other charge for which the defendant was
>> arrested after the commission of the offense for which the
>> sentence was imposed;
>> **that has not been credited against another sentence**.

18 U.S.C. § 3585. (emphasis supplied).

Deference must be given to the BOP's reasonable interpretation of this statute as the

agency that is charged with administering it. *Reno v. Korary*, 515 U.S. 50, 60-62 (1995); *see also*

*Similien v. U.S.*, 2007 WL 496637, * 1 (N.D. Ohio Feb. 8, 2007)(adopting United States Magistrate Judge's report and recommendation indicating that "the Supreme Court 'has given deference to BOP interpretation of sentence administration statutes noting that the BOP is the agency charged with administering 18 U.S.C. § 3585(b))'"")(relying on *Reno*, 515 U.S. at 60).  As discussed more fully below, the BOP accurately calculated Childress's federal sentence commencement and prior custody credit in accordance with 18 U.S.C. § 3585.

### 1.  Commencement – 18 U.S.C. § 3585(a)

With respect to commencement, Respondent asserts that Childress's three-year term of federal imprisonment commenced on April 17, 2013, when he was paroled from the Michigan Department of Corrections to the authority of the U.S. Marshal's Service. Doc. 9, pp. 3-6; Doc. 9-2, p. 163 (Michigan Parole Board Order for Parole); Doc. 9-2, p. 5 (Public Information Inmate Data, Robert Lee Childress, Jr.).   Childress does not contest the BOP's contention that he was paroled by the State of Michigan to the custody of the U.S. Marshal's Service on April 17, 2013, nor does he offer an alternative commencement date. Doc. 1, pp.3, 7.

However, it appears that Childress relies on *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993) for the proposition that, if his status as a state parolee precludes him from receiving jail time credit toward any subsequent sentences, then, his federal sentence has not commenced and will not commence until he is discharged from parole. Doc. 1, pp. 6-7 (Petition). Childress's contention—as well as Childress's reliance on *McClain* for support—is meritless. Though, in *McClain,* the Sixth Circuit determined that the petitioner should be granted time towards his federal sentence, *McClain* is distinguishable. In *McClain*, the court found that, upon the petitioner's release on parole from state charges, the petitioner was placed into exclusive federal custody.  *McClain*, 9 F.3d at 505.  Therefore, the court reasoned that the petitioner should

have been credited with time spent in custody *after* he was paroled by the state into the exclusive custody of the federal authorities. *Id.*

In the instant case, Childress was paroled by the state into federal custody on April 17, 2013. Doc. 9-2, p. 163. Accordingly, until April 17, 2013, the State of Michigan had primary custody of Childress as a state parolee, parole violator, and offender. *See Pought v. Samuels,* 2014 WL 6966995, *2, 9 (N.D.W.Va. December 8, 2014)* (concluding that, because Pought was serving the unexpired portion of his state sentence as a parole violator, he was in the primary custody of the State of Michigan until paroled to federal authorities); *Rodriguez-Gonzalez v. Federal Bureau of Prisons, 2015 WL 2238592, *3 (N.D. Ohio May 12, 2015)* (addressing the change in primary custody or jurisdiction between prisoner's service of a state sentence and a federal sentence and stating that, "[w]hen a federal sentence is imposed upon a defendant who is in primary nonfederal custody, the nonfederal authority retains primary jurisdiction over the petitioner, and federal custody does not commence until the non-federal authority relinquishes jurisdiction")(citing *Cervantes v. Coakley, 2013 WL 5507487, *3 (N.D. Ohio Oct. 2, 2013)).*

Based on the foregoing, the undersigned concludes that Respondent properly determined Childress's federal sentence commencement date under § 3585(a) as the date on which he was paroled from state authorities into federal custody because that was "the date the defendant [was] received in custody," i.e. April 17, 2013. Doc. 9-2, p. 163.

## 2. Jail Credit – 18 U.S.C. § 3585(b)

Respondent argues that the Michigan Department of Corrections (MDOC) applied the 284 days Childress spent in state custody between January 4, 2008, and October 13, 2008, "against his state parole violator term," and that it therefore cannot be counted towards Childress's federal sentence. Doc. 9, p. 8 (Response). In support of this contention, Respondent

13

relies on an e-mail to declarant Forest B. Kelly[9] ("declarant Kelly") from Connie M. Trevino

("Trevino"), a Records Audit Specialist in the Central Time Computation Unit of the Michigan

Department of Corrections ("Document 2o" (Doc. 9-2, p. 119)). Doc. 9, pp. 8-10. In the e-mail,

Trevino states that, prior to Childress being paroled to the custody of the BOP on April 17, 2013,

he was last paroled on February 15, 2007, and then was taken into custody on January 4, 2008,

where he remained until he was returned to the MDOC-Reception & Guidance Center. Doc. 9-2,

p. 119. Trevino states that, "although [Childress] was not awarded any jail credit on the

Judgment of Sentence for #08-219884-FH [the Oakland sentence], he was credited with all time

in custody, and that credit (specifically from 1/4/08 until his return to prison on 12/18/08) was

applied to his prior parole sentence." Doc. 9-2, p. 119.

     In Childress's Reply, he challenges the Respondent's reliance on Document 2o, saying

that the information in the e-mail is unreliable according to the Federal Rules of Evidence—

though he does not specify which section of the Rules he relies on—and that the e-mail "is

confusing and drafted by an audit record specialist who has not sworn to the information being

presented as evidence." Doc. 10, p. 5-6. Childress claims that Trevino, the e-mail's author, is a

"layman who does not properly speak from a legal perspective" and that the e-mail offers

"nothing more than a personal interpretation of what the law is from a non-legal perspective."

Doc. 10, p. 6.

     Notwithstanding Childress's arguments, Document 2o was attached to and relied upon by

declarant Kelly in his sworn statement regarding Childress's federal sentence computation. Doc.

9, pp. 8-10; Doc. 9-2, p. 53, ¶ ff; Doc. 9-2, p. 54, ¶ mm; Doc. 9-2, pp. 59-60, ¶ o. Also, the e-

---

[9] Kelly is employed as a Correctional Programs Specialist for the BOP's Designations and Sentence Computation Center (DSCC) in Grand Prairie, Texas. Doc. 9-2, p. 47 (Declaration of Forest B. Kelly). Kelly's sworn statement is attached to and relied upon by Respondent in responding to Childress's petition. Doc. 9; Doc. 9-2, pp. 47-168.

mail reflects Trevino's affiliation with the Michigan Department of Corrections in the Central Time Computation Unit, a unit responsible for "processing judgments of sentence and performing all time computation functions for prisoners" including tasks such as calculating release dates based on "transactions" that may alter the date and verifying the calculated release dates annually.  See Doc. 9-2, p. 119; *See also Director's Office Memorandum 2014 – 2: Central Time Computation Unit,* Dec. 30, 2013, www.michigan.gov/documents/corrections/DOM_2_-_Central_Time_Comp_Unit_444154_7.pdf.   Furthermore, Trevino's indication that, though Childress was not given jail credit on his new state sentence, the time he spent in custody "was applied to his prior parole sentence" is, as discussed below, consistent with Michigan law, *see People v. Idziak,* 484 Mich. 549 (2009), and is also consistent with the Responses to Childress's Requests and Appeals for Administrative Remedies, *see* Doc. 9-2, p. 12-18 (indicating that the credit Childress seeks had been applied to the unexpired portion of his prior state sentences from which he was paroled).

Deference is due the BOP's calculation because it is the agency that is charged with administering the sentence calculation statute, and Childress has failed to show that the BOP's denial of the 284 days credit against Childress's federal sentence computation was an unreasonable application of 18 U.S.C. § 3585(b). *Reno,* 515 U.S. at 61. The BOP *Sentence Computation Manual* defines "official detention" as "time spent under a federal detention order." Doc. 9-2, p. 26.  If a prisoner is subject to both an "undischarged term of imprisonment" and a new federal sentence and the federal sentence is to be served consecutive to the undischarged term, then "the federal sentence shall not be placed into operation until the U.S. Marshals Service or the Bureau of Prisons gains exclusive custody of the prisoner."  Doc. 9-2, p. 42.

Childress relies heavily on *People v. Idziak,* 484 Mich. 549 (2009) to support his petition. He asserts that, based on *Idziak,* his status as a parolee at the time he was arrested and charged in Oakland County precluded him from receiving jail credit towards his state sentence and, therefore, the time must be credited against his federal sentence. Doc. 1, pp. 5-7 (Petition). Contrary to Childress's position, *Idziak* does not support his claim that his sentence was miscalculated.

In *Idziak,* the Supreme Court of Michigan held that state parolees who are convicted of a new state offense and sentenced to a new state prison term do not receive state jail credit. The court concluded that when a parolee is arrested on the new charge, he "continues to serve out any unexpired portion of his earlier sentence unless and until discharged by the Parole Board." 484 Mich. at 562. The court reasoned that, when a parolee is arrested, "the second part of MCL 791.238(2) establishes that the time *after* 'the date of the prisoner's availability for return to an institution' *is* to be counted as time served against the parolee's original sentence."[10] *Id.* at 565-66 (emphasis in original). "For a prisoner paroled and arrested again in Michigan, the parolee's date of availability is effectively the date of his arrest. *Idziak*, 484 Mich. at 566 (internal citations and quotations omitted).

Childress acknowledges that he was on parole when he was arrested by state authorities on January 4, 2008. See Doc. 1, p. 6; Doc. 9-2, 14, (Regional Administrative Remedy Appeal). When Childress was paroled for the second time in 2007 (after the 2005 violation), he was not "discharged" by the Michigan Parole Board, nor had the maximum ten-year period elapsed from his sentences in Wayne County cases 00-4507 and 01-2772. See Doc. 9-2, p. 69 (MDOC

---

[10] "A prisoner violating the provisions of his or her parole and for whose return a warrant has been issued by the deputy director of the bureau of field services is treated as an escaped prisoner and *is liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment.* The time from the date of the declared violation to the date of the prisoner's availability for return to an institution shall not be counted as time served." M.C.L. 791.238(2)(emphasis supplied).

Offender Tracking Information Systems-Offender Profile)(Childress was sentenced to two to ten years of imprisonment in Wayne County cases 00-4507 and 01-2772 on September 12, 2002; therefore, the term started on September 12, 2002, and could not have expired until 2012, whereas Childress was arrested in 2008). Therefore, when Childress was arrested on January 4, 2008, he was still subject to the time remaining on the maximum sentence from which he was paroled in 2007 and was prohibited from receiving jail credit toward his new state sentences. *Idziak*, 484 Mich. at 572; MCL 791.238(2).

In *Idziak*, instead of applying the time spent in custody to the new state sentence, the court found that the time served following the arrest on the new state charge was properly considered time spent serving the original state sentence from which Idziak was paroled. *Id.* at 565. The court reasoned:

> [P]arolees are granted credit against their earlier sentences for time served in jail under MCL 791.238(2). Thus, both parolees and nonparolees receive credit for time served. Defendant may prefer credit on his new sentence, but this is not what the statutes require.

*Idziak*, 484 Mich. at 572.

Similarly, as a state parolee liable to serve the unexpired portion of his prior sentence for which he was on state parole when arrested on a new state charge, Childress was not entitled to credit toward his federal sentence either. *See Pought*, 2014 WL 6966995. As the court reasoned in *Pought*, "[u]nder Michigan law, the term 'parole' is defined as a conditional release, not a completion of the original sentence," and, consequently, when a parolee violates the terms of his "conditional release," he is immediately taken into custody "for service of the remainder of his original state sentences" *Id.* at *8-9. Though Pought was not subject to a new state sentence, the Court held that, because he was in state custody serving the remainder of his original state

sentence, the time he spent in custody could not be credited against his federal sentence as "it would amount to double credit in violation of 18 U.S.C. § 3585(b)."[11] *Id.*

While Childress may prefer to have the time he spent in custody applied toward his new state or federal sentence, in accordance with 18 U.S.C. § 3585(b) and M.C.L. 791.238(2), that time was properly applied to the original state sentence from which he was paroled at the time of his arrest on January 4, 2008.  *See e.g., Idziak*, 484 Mich. at 572; *Pought*, 2014 WL 69666995. Thus, because the time Childress spent in custody from January 4, 2008, through October 13, 2008, was credited toward service of the original state sentence from which he was paroled, Childress's 284 days in custody are ineligible as prior custody credit toward his federal sentence. *See* 18 U.S.C. § 3585(b)(credit can only be awarded if it "has not be credited against another sentence"); *see also Pought*, 2014 WL 6966995.

Deference is due the BOP's interpretation and implementation of § 3585 and Childress has made no showing that the BOP erred in its reliance on the MDOC's calculation of time served and time credited, or that the BOP's interpretation and calculation is unreasonable. Here, the time Childress spent in custody between January 4, 2008, and October 13, 2008, was credited towards his service of the prior maximum state sentence from which he was on parole. *See* M.C.L. 791.238(2); *Idziak*, 484 Mich. at 572.  Accordingly, the time cannot be credited toward Childress's federal prison term because to do so would constitute double-crediting, which is prohibited by the federal statute's requirement that the prior custody time "**has *not been credited***

---

[11] In *Pought*, the petitioner argued that, because he was never resentenced in state court, the time spent in custody did not otherwise benefit his state sentence.  *Pought*, 2014 WL 6966995, * 2, 9.  However, as discussed, the court found the petitioner's argument to be without merit and did not award any prior custody credit to Pought's federal sentence for the time spent in custody because he was a parole violator serving out the unexpired maximum sentence in custody.  *Id.* at *2, 9.

*against another sentence."* 18 U.S.C. § 3585(b) (emphasis supplied). Thus, Childress's petition for credit against his federal sentence under § 3585(b) should be denied.

Further, because the time that Childress spent in custody prior to sentencing in Oakland County was in conjunction with a past offense that is separate from any new offenses or sentences, denying credit toward the new federal sentence does not violate the Double Jeopardy Clause.

## V.      Recommendation

For the reasons set forth herein, the undersigned recommends that the Court **DENY** Childress's petition.

Dated: July 16, 2015

_____
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986)